UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CAROLYN ANN WILES<br><br>    Plaintiff<br><br>    v.<br><br>NANCY A. BERRYHILL[1], Acting Commissioner of Social Security,<br><br>    Defendant. | Case No. 2:16-cv-09558-GJS<br><br>**MEMORANDUM OPINION AND ORDER** |

## I. PROCEDURAL HISTORY

Plaintiff Carolyn Ann Wiles ("Plaintiff") filed a complaint seeking review of Defendant Commissioner of Social Security's ("Commissioner") denial of her application for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB"). The parties filed consents to proceed before the undersigned United States Magistrate Judge [Dkts. 10, 24] and briefs addressing disputed issues in the case [Dkt. 19 ("Pltf.'s Br.") and Dkt. 20 ("Def.'s Br."), Dkt. 21 ("Pltf.'s Reply).] The Court has taken the parties' briefing under submission without oral

---

[1] The Court notes that Nancy A. Berryhill became the Acting Commissioner of the Social Security Administration on January 23, 2017. Accordingly, pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, the Court orders that the caption be amended to substitute Nancy A. Berryhill for Carolyn W. Colvin as the defendant in this action.

argument. For the reasons discussed below, the Court finds that this matter should be remanded for further proceedings.

## II. ADMINISTRATIVE DECISION UNDER REVIEW

On January 25, 2013, Plaintiff filed an application for DIB. [Dkt. 13, Administrative Record ("AR") 17, 165-173.] Plaintiff also filed an application for SSI on January 31, 2013. [*Id.*; 155-164] The Commissioner denied her initial claims for benefits on June 7, 2013, and upon reconsideration on September 27, 2013. [*Id.*] On May 18, 2015, a hearing was held before Administrative Law Judge ("ALJ") Mary L. Everstein. [AR 32-62.] On June 23, 2015, the ALJ issued a decision denying Plaintiff's request for benefits. [AR 17-31.] Plaintiff requested review from the Appeals Council, which denied review on November 2, 2016. [AR 1-6.]

Applying the five-step sequential evaluation process, the ALJ found that Plaintiff was not disabled. *See* 20 C.F.R. §§ 404.1520(b)-(g)(1); 416.920(b)-(g)(1). At step one, the ALJ concluded that Plaintiff had not engaged in substantial gainful activity since June 17, 2012, the alleged onset date, through December 31, 2016, her date last insured. [AR 19.] At step two, the ALJ found that Plaintiff suffered from the following severe impairments: history of right shoulder acromioplasty with rotator cup repair; scoliosis; depression; anxiety; headaches; and chronic neck and back sprain/strain. [*Id.* (citing 20 C.F.R. §§ 404.1520(c) and 416.920(c)).] Next, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. [AR 22 (citing 20 C.F.R. Part 404, Subpart P, Appendix 1; 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926).]

The ALJ found that Plaintiff had the following residual functional capacity (RFC):

///

///

> [M]edium work as defined in 20 CFR 404.1567(c) and 416.967(c) except for no more than occasional climbing [of] ladders, stooping, crouching, and crawling; and performing no more than simple routine tasks with limited public contact, such as no more than superficial, incidental contact.

[AR 23.] Applying this RFC, the ALJ found that Plaintiff had no past relevant work, but determined that based on her age (46 years old), limited education, and ability to communicate in English, she could perform representative occupations such as hand packager (Dictionary of Occupational Titles ("DOT") 920.587-018), laundry worker (DOT 361.685-018), and assembler (DOT 706.684-022) and, thus, is not disabled. [AR 26.]

### III. GOVERNING STANDARD

Under 42 U.S.C. § 405(g), the Court reviews the Commissioner's decision to determine if: (1) the Commissioner's findings are supported by substantial evidence; and (2) the Commissioner used correct legal standards. *See Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1159 (9th Cir. 2008); *Hoopai v. Astrue*, 499 F.3d 1071, 1074 (9th Cir. 2007). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal citation and quotations omitted); *see also Hoopai*, 499 F.3d at 1074.

### IV. DISCUSSION

Four physicians rendered opinions about Plaintiff's mental limitations. On April 13, 2013, Dr. Gary A. Bartell, M.D., a consultative examiner retained by the state agency, examined Plaintiff and prepared a report with his opinion. [*See* AR 457-461.] On March 5, 2015, Dr. David Samson, M.D., a treating physician, rendered his opinion. [AR 660-663.] Two, non-examining state agency consultants, Dr. Heather Barrons, Psy.D., and Dr. Harvey Bilik, Psy.D., also rendered opinions on June 7, 2013 and September 24, 2013, respectively. [AR 63-90; 93-118.] Plaintiff argues that the opinions of Dr. Bartell and Dr. Samson were improperly

rejected by the ALJ. [Pltf.'s Br. at 6.] The Court will address each contention in turn.

### A. Dr. Bartell—Consultative Psychiatrist

"The opinion of an examining physician…is entitled to greater weight than the opinion of a nonexamining physician." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995), as amended April 9, 1996. "If the opinion of an examining physician is contradicted by the opinion of another doctor, it may nevertheless be rejected only 'for specific and legitimate reasons that are supported by substantial evidence in the record.'" *Buck v. Berryhill*, 869 F.3d 1040, 1050 (9th Cir. 2017) (quoting *Lester*, 81 F.3d at 830-831). "The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion [of] an examining physician." *Lester*, 81 F.3d at 831.

Dr. Bartell completed a psychiatric evaluation of Plaintiff in April 2013. [AR 457-461.] Dr. Bartell diagnosed Plaintiff with "adjustment disorder with depressed mood" and "dependent features to personality." [AR 460.] Dr. Bartell assessed Plaintiff as "moderately impaired" in the following functions: ability to accept instructions from supervisors and interact with coworkers and the public; ability to perform work activities consistently without special instructions; ability to maintain regular attendance and complete a normal workday without interruption; and ability to deal with the usual stresses encountered in the workplace. [AR 461.] Dr. Bartell also assessed Plaintiff as "mildly impaired" in her ability to perform simple and repetitive tasks as well as detailed and complex tasks.

The ALJ did not specifically indicate the weight she assigned to Dr. Bartell's opinion, but stated that "[a]ll medical consultants' opinions were carefully reviewed and considered…[h]owever…the opinions set forth in Exhibits 2A [Dr. Barron's opinion] and 6A [Dr. Bilik's opinion] are found fully credible and given *greater weight*." [AR 24 (emphasis added).] However, as Plaintiff correctly points out and the Commissioner concedes, "the reviewing agency doctors gave weight to Dr.

Bartell's opinion." [Def.'s Br. at 6; Pltf.'s Br at 8-10.] Specifically, Dr. Barron referred to Dr. Bartell's medical source statement ("MSS") and said that it "shows mild to moderate limitations and is *adopted with great weight* as it is consistent with overall MER [medical evidence of record]." [AR 84 (emphasis added).] Similarly, Dr. Bilik opined that "*greatest weight* [is given] to MSS from Dr. Bartell." [AR 112 (emphasis added).] In fact, Dr. Barron's opinion, which the ALJ afforded "significant weight," found similar limitations in Plaintiff's ability to accept instruction from supervisors, interact with coworkers and public, and complete a normal workweek without interruption. [*See* AR 73-74.] Plaintiff contends that the ALJ erred by failing to offer any explanation as to why: (1) less weight was assigned to Dr. Bartell's opinion and (2) Dr. Bartell's mental limitations (several of which Dr. Barron agreed with) were omitted from the RFC. [Pltf.'s Br. at 10.] The Court agrees.

A claimant's RFC is the most a claimant can still do despite her limitations. *Smolen v. Chater*, 80 F.3d 1273, 1291 (9th Cir. 1996) (citing 20 C.F.R. §§ 404.1545(a); 416.945(a)); Social Security Ruling ("SSR") 96-8p (an RFC assessment is ordinarily the "maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis," meaning "8 hours a day, for 5 days a week, or an equivalent work schedule"). In assessing a claimant's RFC, the ALJ must consider all of the relevant evidence in the record. *See* 20 C.F.R. §§ 404.1545(a)(2), (3); 416.945(a)(2), (3). If an RFC assessment conflicts with an opinion from a medical source, the ALJ "must explain why the opinion was not adopted." SSR 96-8p; *see also Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (explaining that an ALJ is not required to discuss all the evidence presented, but must explain the rejection of uncontroverted medical evidence, as well as significant probative evidence).

Here, the ALJ erred by failing to provide any reason for rejecting *any portion* of Dr. Bartell's opinion.[2] The Commissioner contends that this error is harmless because the ALJ's RFC accounted for all of the limitations assessed by Dr. Bartell. [Def.'s Br. at 6.] Specifically, the Commissioner argues that a restriction to "simple routine tasks with limited public contact, further defined as no more than superficial, incidental contact" applied "the limitations opined by Dr. Bartell." [Def.'s Br. at 10.] The Commissioner's argument is not persuasive. The ALJ's RFC restriction for simple and repetitive tasks encompasses Plaintiff's mild impairment in her "ability to perform simple and repetitive tasks as well as detailed and complex tasks" and the restriction to limited public contact encompasses Plaintiff's moderate impairment in interacting with the public. However, the RFC does not sufficiently account for Plaintiff's moderate limitations in accepting instructions from supervisors and interacting with coworkers; performing work activities consistently without special instructions; maintaining regular attendance and completing a normal workday without interruption; and dealing with the usual stresses encountered in the workplace. *See, e.g.*, *Morinskey v. Astrue*, 458 Fed. Appx. 640, 641 (9th Cir. 2011) (finding ALJ erred by failing to analyze or make findings setting forth specific, legitimate reasons for rejecting the examining consultant's opinion that the claimant was moderately impaired in the ability to maintain regular attendance, sustain an ordinary routine, and complete a normal work day or workweek without interruption from his bi-polar disorder); *Padilla v. Colvin*, No. ED CV 14-1843-PLA, 2015 WL 3849128, at *5-6 (C.D. Cal. June 22, 2015)

---

[2] Although not raised as an issue on appeal, the Court notes that the ALJ purportedly gave significant weight to Dr. Barron's opinion, but failed to explain why she did not include in the RFC assessment Dr. Barron's findings that Plaintiff has moderate limitations in the ability to accept instruction from supervisors, interact with coworkers and public, and complete a normal workday and workweek without interruption from psychologically-based symptoms. *See* SSR 96-8p; *see also Vincent*, 739 F.2d at 1394-95.

6

("despite the ALJ's assertion that he afforded [the examining psychiatrist's] opinion significant weight . . . , the ALJ failed to explain why he apparently rejected and did not include in the RFC determination [the examining psychiatrist's] moderate limitations in the ability to perform work activities on a consistent basis without special or additional supervision, and to complete a normal workday or work week due to her mental condition").

The Commissioner further notes that "moderate" limitations in various areas of functioning, such as in the ability to maintain regular attendance or to complete a normal workday and workweek without interruption from mental symptoms, are not per se disabling. [Def.'s Br. at 7 (citing Hearings Appeals and Litigation Manual I-2-5-20).] While Dr. Bartell's findings of moderate limitations do not necessarily indicate that Plaintiff is disabled, the ALJ's RFC assessment did not adequately reflect all of the limitations that were identified by Dr. Bartell. Because the ALJ did not offer any specific explanation as to why she implicitly rejected Dr. Bartell's findings, the ALJ's RFC assessment is not supported by substantial evidence. *See Vincent*, 739 F.2d at 1394-95; *see also Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1298-99 (9th Cir. 1999).

### B. Dr. Samson—Treating Psychiatrist

"The medical opinion of a [Plaintiff's] treating physician is given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the Plaintiff's] case record.'" *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017) (quoting 20 C.F.R. § 404.1527(c)(2)). "When a treating physician's opinion is not controlling, it is weighted according to factors such as the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability, consistency with the record, and specialization of the physician." *Id.*

"To reject [the] uncontradicted opinion of a treating or examining doctor, an ALJ must state clear and convincing reasons that are supported by substantial evidence." *Ryan v. Comm'r of Soc. Sec. Admin.*, 528 F.3d 1194, 1198 (9th Cir. 2008) (alteration in original) (internal quotation omitted). As stated previously, "[i]f a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005); *see also Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) ("[The] reasons for rejecting a treating doctor's credible opinion on disability are comparable to those required for rejecting a treating doctor's medical opinion."). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating [her] interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (internal quotation omitted).

Plaintiff first started receiving treatment from the Santa Barbara County Alcohol, Drug, and Mental Health Services Facility in September 2011. [AR 466-484.] The medical record includes approximately fifteen treatment notes from Santa Barbara County Alcohol, Drug, and Mental Health Services from September 2011 to April 2015. Most of Plaintiff's visits were with Wendy Del Cid, Marriage and Family therapist. [See AR 463-496] However, Plaintiff saw Dr. Samson in October 2013, March 2015, and April 2015. [AR 660-663; 738-741.] In determining Plaintiff's RFC, the ALJ found that the "mental treating source assessment by Dr. Samson in Exhibit 14F is found not generally credible and given *minimal to no weight* because it is not well supported and is inconsistent with the weight of the medical record." [AR 23 (emphasis added).]

First, the ALJ found that Dr. Samson's opinions were not supported by the objective medical evidence. [AR 24.] Specifically, the ALJ pointed to gaps in Plaintiff's mental health treatment from Santa Barbara County Alcohol, Drug, and

8

Mental Health Services between May 2013 and March 2015. [*Id.*] An ALJ may properly rely on unexplained or inadequately explained failure to seek treatment. *See Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012). However, in this case, Plaintiff did receive mental health treatment from another medical provider, Dr. Gregerson, between May 2013 and March 2015. [*See* AR 532 (June 2013 treatment note indicating severe stress, moderate-severe depression); AR 514 & 528 (July 2013 treatment notes indicating severe stress, moderate-severe depression); AR 524 & 606 (August 2013 treatment notes indicating severe stress, moderate-severe depression); AR 563 (Dr. Gregerson encouraged Plaintiff to return to counseling); AR 610 (September 2013 treatment note indicating severe stress, moderate-severe depression); AR 565 (November 2013 treatment note from Dr. Gregerson indicating that Plaintiff should continue counseling and reduce stress); AR 568 (January 2014 treatment note indicating no depression but anxiety continues, counseling is helping); AR 573 (February 2014 treatment note encouraging counseling and continuing medication); AR 593 (September 2014 Plaintiff reported difficulty accessing her counselor and requested another referral for mental health counseling); AR 597 (November 2014 treatment note—Plaintiff restarted counseling and Dr. Gregerson indicated no depression). Thus, while Plaintiff does not have any treatment notes from Santa Barbara County Alcohol, Drug, and Mental Health Services between May 2013 and March 2015, the record shows that she did continue to receive mental health treatment during this time. Accordingly, lack of objective medical evidence regarding Plaintiff's mental health treatment from 2013-2015 is not a legitimate basis for rejecting Dr. Samson's findings regarding Plaintiff's mental limitations.

Second, the ALJ asserted that Dr. Samson's opinions were inconsistent with statements Plaintiff made to the consultative psychiatrist, Dr. Bartell. [AR 23.] However, the ALJ's selective summary of Plaintiff's treatment records does not accurately convey the full substance of Plaintiff's mental health records as a whole.

An ALJ must consider all of the relevant evidence in the record and may not point to only those portions of the records that bolster his findings. *See, e.g., Holohan v. Massanari,* 246 F.3d 1195, 1207–08 (9th Cir. 2001) (holding that an ALJ cannot selectively rely on some entries in plaintiff's records while ignoring others). As the Ninth Circuit has explained, "[c]ycles of improvement and debilitating symptoms are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working." *Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014). Thus, "[r]eports of 'improvement' in the context of mental health issues must be interpreted with an understanding of the patient's overall well-being and the nature of her symptoms." *Id.* at 1017; *see also Holohan,* 246 F.3d at 1205 ("[The treating physician's] statements must be read in context of the overall diagnostic picture [s]he draws. That a person who suffers from severe panic attacks, anxiety, and depression makes some improvement does not mean that the person's impairments no longer seriously affect her ability to function in a workplace.").

Here, the ALJ found that Plaintiff "indicated to the consultative psychiatric examiner that she had no significant mental health treatment." [*Id.*] Plaintiff did not say this. Rather, Plaintiff indicated that she had been "seeing a therapist at mental health named Wendy Delcid." [AR 458.] The ALJ also stated that Plaintiff "admitted to the psychiatric examiner that the reason she was not working was because her physician told her to not work, not because of her inability to work or disability." [AR 23-24.] However, what Plaintiff told the consultative psychiatrist was "[t]he doctor told me I couldn't work anymore." [AR 457.] Plaintiff did not say that she was not disabled. The ALJ also noted that "the physical therapist indicated [Plaintiff] became more stressed because she was 'constantly' talking about her pain in the context of her disability case" and Plaintiff "was assessed with only 'seasonal' depression and subsequently admitted improvement in mental health

10

on medication" in December 2012. [AR 24.] Contrary to the ALJ's findings, when viewed in full, Plaintiff's mental health records do not depict a pattern of self-inflicted impairments or improvements with medication. Rather, Plaintiff's progress notes, from various treatment providers, show that Plaintiff's symptoms have waxed and waned throughout her treatment. For instance, as the ALJ noted, Plaintiff indicated improvements in December 2012, however, a few months later (*i.e.,* in March 2013), Plaintiff's treatment note indicates that she has "severe stress and moderate to severe depression." [AR 553.] In July 2013, Plaintiff's treatment notes indicated that she was "having good efficacy with her current antidepressant med." [AR 514.] However, Plaintiff's August 2013 treatment note states that she is again experiencing severe stress and moderate-severe depression. [AR 524, 606.] Several months later in January 2014, Plaintiff had no depression and counseling was helping with anxiety, but in September 2014, Plaintiff was "not having adequate efficacy" with medication. [AR 593.] Dr. Samson indicated on Plaintiff's final treatment notes, dated March 2015 and April 2015 that Plaintiff was experiencing "positive symptoms" from therapy. [*See* AR 738, 740.]

Accordingly, the ALJ's finding that the opinion of Dr. Samson is not consistent with the record as a whole—which allegedly showed that Plaintiff's condition was self-inflicted and improving with medication—is not supported by substantial evidence. Thus, this second reason was also not a legitimate basis for rejecting Dr. Samson's findings regarding Plaintiff's mental limitations.

The Commissioner suggests that the ALJ properly rejected Dr. Samson's opinion because: (1) it was presented on a checklist form with no independent explanations; and (2) the two state agency consultants and consultative psychiatrist contradict Dr. Samson's opinion. [Def.'s Br. at 3, 5.] However, the ALJ did not identify these rationales to support her findings. The Court may not rely on reasons the ALJ did not provide to affirm the ALJ's decision. *See Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) ("We are constrained to review the reasons the ALJ

11

asserts"); *Pinto v. Massanari*, 249 F.3d 840, 847 (9th Cir. 2001) (noting that the Court "cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision").

Accordingly, the Court finds that the ALJ rejected the opinions of Dr. Bartell and Dr. Samson without setting forth the required specific and legitimate reasons. This was error, and the Court cannot say that it was harmless. Remand is warranted.

## V.  CONCLUSION

The decision of whether to remand for further proceedings or order an immediate award of benefits is within the district court's discretion. *Harman v. Apfel*, 211 F.3d 1172, 1175-78 (9th Cir. 2000). When no useful purpose would be served by further administrative proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. *Id.* at 1179 ("the decision of whether to remand for further proceedings turns upon the likely utility of such proceedings"). But when there are outstanding issues that must be resolved before a determination of disability can be made, and it is not clear from the record the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated, remand is appropriate. *Id.*

The Court finds that remand is appropriate because the circumstances of this case suggest that further administrative review could remedy the ALJ's errors. *See INS v. Ventura*, 537 U.S. 12, 16 (2002) (upon reversal of an administrative determination, the proper course is remand for additional agency investigation or explanation, "except in rare circumstances"); *Treichler v. Comm'r of Soc. Sec. Admin.,* 775 F.3d 1090, 1101 (9th Cir. 2014) (remand for award of benefits is inappropriate where "there is conflicting evidence, and not all essential factual issues have been resolved"); *Harman*, 211 F.3d at 1180-81.

For all of the foregoing reasons, **IT IS ORDERED** that:

(1) the decision of the Commissioner is REVERSED and this matter REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) for further

12

administrative proceedings consistent with this Memorandum Opinion and Order; and

(2) Judgment be entered in favor of Plaintiff.

**IT IS SO ORDERED.**

DATED: November 8, 2017



_____
GAIL J. STANDISH
UNITED STATES MAGISTRATE JUDGE